# IN RE APPLICATION OF DRAPER.

PATENTS; NON-PATENTABILITY; MECHANICAL INGENUITY.

1. The mere enlargement of a covering box, shield, or plate of a holding-stud of a garment-supporter, so as to allow greater space within the box, is not the result of an application of the inventive faculty. ·

2. Notwithstanding that a device may be superior in finish, neater in its appearance, and generally better accommodated for the uses for which it is intended than the devices which it is said to have displaced, yet it is not necessarily a patentable device.

3. Not every change or improvement is patentable invention, and the merit of the exercise of the inventive faculty must be refused to such things as are plainly within the scope of mechanical ingenuity.

No. 66. Patents Appeals. Submitted March 9, 1892. Decided April 7, 1897.

HEARING on an appeal from a decision of the Commissioner of Patents refusing an application for letters patent. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Maynadier & Mitchell* for the appellant.

*Mr. W. A. Megrath* for the Commissioner of Patents.

Mr. Justice MORRIS delivered the opinion of the Court: ·

This is an appeal from the decision of the Commissioner of Patents in which he refused to grant letters patent for an alleged improvement in shield-loops for garment-supporters.

The improvement or invention for which letters patent were sought is described as follows:

"As an improved article of manufacture the stocking-supporter herein shown and described, comprising a box with one flat slotted side, a supporting strap, and a holding-

10 Ct. App.—36

stud connected to the supporting-strap by a flexible connection, the shank of the stud being of a length to allow room for the fabric of the stocking between the holding-plate of the stud and the flat side of the box and between the under side of the head of the stud and the flat side of the box, and the box being deep enough to prevent jamming of the fabric of the stocking between the head of the stud and the inner opposed surface of the box."

The application was rejected by all the tribunals of the Patent Office on the ground of want of novelty, and therefore of patentability; and various patents, American, British, and German, were cited to show that the alleged invention had been anticipated by others.

It seems to be conceded by the appellant, Lucius Dana Draper, that his device is only that of a patent granted to one Lindsey on December 10, 1878, and which has expired and become the property of the public, with the addition of a covering-plate or box to prevent injury to the stocking by abrasion. This covering-plate or box is the alleged improvement upon the Lindsey device. But it appears that in one of the patents referred to as anticipations of the appellant's claim, a patent issued to one Roper on February 12, 1895, there was a similar covering-plate used for the very same purpose. It is true that the covering-plate in the Roper device is open at the sides and is not a closed box neatly rounded at the sides, as is the device of the appellant; but it is not apparent that there is any invention in this difference, and no importance seems to be attached to it by the appellant himself. There is, however, another difference between the two devices, which is this; that the covering-plate of the Roper device is so near to the head of the stud that it causes, or at all events does not prevent, the wearing of the stocking; but the covering-plate of the appellant's device is so pressed outwards as not to cause friction between it and the fabric of the stocking. And this difference it is which in the final analysis of the claim is assigned by the applicant as patentable novelty. In other

words, the enlargement of the Roper covering box so as to give increased internal space to it, is the substance of the appellant's claim, and the sole purpose sought to be subserved by it was to prevent the friction or abrasion of the garment upheld.

A device entirely similar to that of the appellant, and with similar internal depths, had been patented to one Colley on March 24, 1885, and in England to one Baker in 1885; but both of these patents were for corset-clasps. It is not denied, however, and, inasmuch as it is asserted by the Commissioner of Patents as a fact, we must assume it to be the fact, that these corset-clasps or corset-fasteners might equally well be used as garment supporters; and we agree with the Commissioner of Patents that they may properly be regarded as anticipations of the appellant's device.

But apart from such anticipations, it is not apparent to us that the mere enlargement of a covering-box, shield, or plate, so as to allow greater space within it, is the result of an application of the inventive faculty. We fully appreciate the difficulty with which the courts have frequently been compelled to wrestle, of determining the precise boundary between the inventive faculty and mechanical ingenuity; and we presume that this boundary must always remain more or less nebulous and indistinct. In the case of *Krementz* v. *Cottle Company*, 148 U. S. 556, Mr. Justice Shiras, speaking for the Supreme Court of the United States, well said: "It is not easy to draw the line that separates the ordinary skill of a mechanic, versed in his art, from the exercise of patentable invention; and the difficulty is specially great in the mechanic arts, where the successive steps in improvements are numerous, and where the changes and modifications are introduced by practical mechanics."

In the case of *Loom Co.* v. *Higgins*, 105 U. S. 580, the same court, by Mr. Justice Bradley, held that it was no argument against the patentability of an invention "that the combination of the different parts or elements for attaining the object in view were so obvious as to merit no title to inven-

tion." And it added "this is often the case with inventions
of the greatest merit."

And Mr. Justice Brown, in the case of *Consolidated Brake-
Shoe Co.* v. *Detroit Co.*, 47 Fed. Rep. 894, said: "When the
other facts in the case leave the question of invention in
doubt, the fact that the device has gone into general use
and has displaced other devices which had previously been
employed for analogous uses is sufficient to turn the scale
in favor of the existence of invention."

And yet by these authorities and by all the authorities it
is conceded that not every change or improvement is patent-
able invention, and that the merit of the exercise of the in-
ventive faculty must be refused to such things as are plainly
within the scope of mechanical ingenuity. Conceding that
the purpose to be subserved is, as it is admitted in the case
before us, to protect a garment from friction and abrasion
consequent upon the proximity of a retaining-stud to the lid
of a protecting box or cover, we are unable to find any exer-
cise of the inventive faculty, or anything more than mere
mechanical skill, in procuring a larger protecting-box where
the lid and stud are not in such close proximity. In other
words, if an article will not fit into a smaller box without
being unduly compressed, it would not seem to require any
very great amount of mechanical ingenuity, much less of
the faculty which we call invention, to procure a larger box
for the purpose. And this seems to us to be all, in con-
templation of the patent laws, that is involved in the appli-
cation of the appellant, notwithstanding that his device may
be superior in finish, neater in its appearance, and generally
better accommodated for the uses for which it is intended,
than the devices which it is said to have displaced.

We concur in the opinion of the Commissioner of Patents,
and we think that his decision should be *affirmed.*

*The clerk of this court will certify this opinion and the pro-
ceedings of this court in the premises to the Commissioner of
Patents, to be entered of record in his office, according to law.*